# IN THE COURT OF APPEALS OF IOWA

No. 19-0628
Filed July 24, 2019

**IN THE INTEREST OF I.D.,**
**Minor Child,**

**M.K., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.

A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

Magdalena Reese of Cooper, Goedicke, Reimer & Reese, P.C., West Des
Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant
Attorney General, for appellee State.

John Jellineck of State Public Defender's Office, Des Moines, guardian ad
litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

This appeal concerns the termination of a mother's parental rights to her child, I.D., who was born in 2018. This is not the first time the juvenile court has terminated the mother's parental rights to a child. Just six months before I.D. was born, the juvenile court terminated the mother's parental rights to two older children based on concerns arising from her substance abuse, her mental health, and a relationship marred by domestic violence.

In spite of the termination of her parental rights to those children, the mother continued to struggle with the issues that led to termination. She used drugs during her pregnancy with I.D. and tested positive for methamphetamine one month before I.D. was born. One week after his birth, the juvenile court removed I.D. from the mother's care and later adjudicated him to be a child in need of assistance (CINA).

In the eight months following the CINA adjudication, the mother kept using drugs, was arrested on criminal charges, and appeared at visitation with unexplained injuries. At the time of the termination hearing, she remained on probation, unemployed, and in need of substance-abuse treatment. The State petitioned to terminate the mother's parental rights, which the juvenile court granted following a hearing.[1]

On appeal, the mother challenges the juvenile court's findings in applying the analytical framework for termination. *See In re P.L.,* 778 N.W.2d 33, 37-38 (discussing the three steps involved in this analytical framework). She also

---

[1] The father's paternal rights were also terminated upon his consent. He is not a party to this appeal.

requests additional time to have I.D. returned to her care. We review her claims de novo. *See In re A*.S., 906 N.W.2d 467, 472 (Iowa 2018).

**I. Statutory Grounds for Termination.**

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h) (2019). Although the juvenile court terminated parental rights on more than one ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). To terminate under Iowa Code section 232.116(1)(h), the State must prove the following by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother does not challenge the sufficiency of the proof on the first three requirements for termination under section 232.116(1)(h). She insinuates the State failed to prove I.D. could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean to mean "at the time of the termination hearing"). "[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance

adjudication." *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (alteration in original) (citation omitted).

The mother acknowledged at the termination hearing that she was not there "saying that [she was] ready to take [I.D.] to live with [her] right now." Given the circumstances, we believe this is sufficient evidence for the establishment of element four of section 232.116(1)(h). *See In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *4 n.5 (Iowa Ct. App. Mar. 22, 2017) (collecting cases in which termination of parental rights was affirmed because a parent admitted the child or children could not be returned to the parent's care at the time of the termination hearing). In any event, clear and convincing evidence shows that returning I.D. to the mother's care at the time of the termination hearing would have exposed him to the type of harm that would lead to a CINA adjudication. The issues that led to the May 2018 CINA adjudication continued throughout the proceedings. She testified she used marijuana and methamphetamine just a week before the termination hearing. Although the mother testified she was willing to do the work necessary to address her issues by beginning inpatient treatment the week after the termination hearing, it is clear she was in no better position to care for I.D. at the time of the termination hearing than she had been at the time of the CINA adjudication. The State proved the grounds for terminating the mother's parental rights under section 232.116(1)(h).

**II. Best Interests.**

The mother next contends the State failed to prove that termination is in I.D.'s best interests. *See D.W.*, 791 N.W.2d at 706-07 ("If a ground for termination is established, the court must, secondly, apply the best-interest framework set out

in section 232.116(2) to decide if the grounds for termination should result in a termination of parental rights.").  In making the "best interests" determination, our primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child."  *P.L.*, 778 N.W.2d at 37 (quoting Iowa Code § 232.116(2)).  The "defining elements in a child's best interest" are the child's safety and "need for a permanent home."  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The record shows I.D. is young and has been out of the mother's care for all but the first week of his life.  Almost ten months passed between I.D.'s birth and the termination hearing.  In spite of the services offered to the mother during this period, on top of the services offered to her during proceedings involving her other children, the mother had yet to begin the long road to recovery.  Although the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232.  *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000).  The statutory period for termination having passed, we find termination is in I.D.'s best interests.  *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute.  Stated otherwise, plans which extend the [statutory] period during which parents attempt to become adequate in parenting skills should be viewed with a sense of urgency."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children").

### III. Permissive Factors.

The mother also asks the court to decline to terminate her parental rights because one of the permissive factors set forth in Iowa Code section 232.116(3) applies. She asks us to avoid termination of her parental rights because I.D. is in the care of his maternal grandmother, who is willing to act as his guardian. *See* Iowa Code § 232.116(3)(a) (providing that the court "need not terminate" the parent-child relationship if a relative has legal custody of the child). The mother also argues that terminating her parental rights "would be detrimental to the child . . . due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

The decision to apply a statutory factor to avoid terminating parental rights is permissive, not mandatory. *See A.S.*, 906 N.W.2d at 475. Once the State has proved the ground for termination, the parent resisting termination bears the burden of proving a permissive factor applies. *See id.* at 476. In determining whether to apply a permissive factor, we use our discretion based on the unique circumstances of each case. *See id.* at 475. As always, our first consideration is the child's best interests. *See id.*

We decline to apply the permissive factor provided in section 232.116(3)(a) based on I.D.'s placement in his maternal grandmother's care. Even if a guardianship were ordered, it would not provide the permanency afforded by adoption and is not a legally preferable alternative to termination. *See id.* at 477-78. As our supreme court has observed, "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *Id.* at 475 (citation omitted).

We also decline to apply the permissive factor provided in section 232.116(3)(c). I.D. was one-week old when the juvenile court removed him from the mother's care. I.D. remained out of the mother's care throughout the proceedings. The mother has shown no significant bond with I.D. Nor has she shown that terminating her parental rights would harm I.D. based on the closeness of their bond.

**IV. Extension of Time.**

Finally, the mother seeks additional time to allow the return of I.D. to her care. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for six more months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). She claims there is a "reasonable probability" that I.D. could be returned to her care within that time. We disagree. At the time of the termination hearing, the mother had not yet entered treatment. The record suggests her recovery will not be complete in six months. Because the need for I.D.'s removal will continue to exist following the requested extension, we deny her request.

Children are not equipped with pause buttons, and delaying their permanency in favor of the parents goes against the children's best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *A.C.*, 415 N.W.2d at 614.

**AFFIRMED.**